# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| Employers Reinsurance Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 06-0188-CV-W-FJG |
| Massachusetts Mutual Life | ) |
| Insurance Company, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Mass Mutual's outstanding claim for prejudgment interest.

### I. BACKGROUND

Employers Reinsurance Corporation ("ERC") commenced this lawsuit against Massachusetts Mutual Life Insurance Company ("Mass Mutual") in April 2006, challenging Mass Mutual's claims handling practices and designation of losses under a reinsurance treaty ("Treaty"). Under the Treaty, ERC reinsured Mass Mutual for certain claims filed under individual long-term disability policies (i.e. covered losses), and would issue reimbursement payments to Mass Mutual on a monthly basis for covered losses.

Upon filing its complaint, ERC stopped reimbursing Mass Mutual on the basis that an offset provision in the Treaty allowed ERC to withhold the monies ERC reasonably believed were owed by Mass Mutual. Mass Mutual filed a Counterclaim against ERC on the grounds that ERC's non-payment constituted a breach of contract, and sought interest on the reimbursement payments ERC had withheld. (Doc. No. 50). On August 19, 2008, the Court ruled on summary judgment that ERC's failure to

reimburse Mass Mutual was improper because the Treaty's offset provision did not allow one party to offset loss of claim expenses unless the amount due was agreed upon before it was withheld. (Doc. No. 310). Four days after the Court's ruling, ERC paid Mass Mutual $32,171,436, which was the balance of payments withheld from April 2006 through August 2008. ERC did not pay Mass Mutual any interest at that time.

Presently, all issues before the Court have been resolved; however, before entry of final judgment the Court must determine the amount of any interest due on the sum of money ERC withheld from Mass Mutual, as the parties have not reached an agreement on the matter.[1]

## II. LEGAL STANDARD

Under Connecticut law, prejudgment interest is to be awarded only when equitable considerations deem such that interest is warranted and "the determination is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." Smithfield Assoc., LLC v. Toland Bank, 860 A.2d 738, 748 (2004) (citing Maloney v. PCRE, LLC, 793 A.2d 1118 (2002)). Allowance of prejudgment interest under Connecticut General Statute § 37-3a is a matter of discretion of the trial court. Patron v. Konover, 646 A.2d 901 (Conn. App. 1994). Section 37-3a states in relevant part: "[I]nterest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." C.G.S. § 37-3a.

---

[1] The parties have agreed to waive a jury trial on the remaining issue of interest due (Doc. No. 371).

2

Connecticut courts have construed the statute to give rise to two procedural requirements, pursuant to which a trial court must determine: "(1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated." Sears Roebuck and Co. v. Bd. of Tax Review of the Town of W. Hartford, 699 A.2d 81, 89 (Conn. 1997) (citing Blakeslee Arpaia Chapman, Inc. v. El Constructors, Inc., 687 A.2d 506 (Conn. 1997)). "The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) Ferrato v. Webster Bank, 789 A.2d 472, 477 (Conn. App. 2002) (citing Bertozzi v. McCarthy, 323 A.2d 553 (1973)).

## III.  DISCUSSION

Mass Mutual argues it is entitled to an interest award at the statutory maximum rate of ten percent on the grounds that ERC wrongfully withheld payments due and equitable considerations warrant such an award.

Mass Mutual argues granting interest is equitable under the circumstances because Mass Mutual was denied use of money that it was contractually owed from April 2006 until August 2008. By August 2008, ERC owed Mass Mutual $32,171,436. During the period in question, ERC forced Mass Mutual to cover costs of individual disability claims out of its own pocket, whereas ERC had the money available for its own use.

Mass Mutual asserts that ERC's withholding of payments was "wrongful" under Connecticut case law. In support, Mass Mutual explains Connecticut courts have awarded interest pursuant to § 37-3a in breach of contract claims "[W]here a party

3

claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party." Ceci Bros., Inc. v. Five Twenty-One Corp., 840 A.2d 578, 585 (Conn. App. 2004) (citing Foley v. Huntington, Co., 682 A.2d 1026 (1996)). Mass Mutual argues ERC was contractually obligated to reimburse Mass Mutual for losses under the Treaty, yet, in April 2006, ERC unilaterally decided to stop payments. Furthermore, the Court ruled on summary judgment that ERC was in breach of its reinsurance obligations by withholding payments for losses under the Treaty (Doc. No. 310). Mass Mutual emphasizes that in the context of applying § 37-3a, "[W]rongful is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so." Ferrato, 789 A.2d at 474 (citing Ballantine's Law Dictionary (3rd Ed. 1969)).

ERC responds that an interest award is not warranted because it did not wrongfully withhold the money from Mass Mutual, and equitable considerations under the circumstances do not warrant an interest award. Specifically, ERC asserts that a bona fide dispute existed between the parties, and the Treaty contained an offset provision that ERC believed allowed it to withhold the monies ERC reasonably believed were owed by Mass Mutual. In addition, ERC maintained an accurate quarterly ledger, separate from its own, that accounted for the monies offset. ERC states it did not use the money for any purpose; it merely held it, and following the summary judgment ruling in August 2008, ERC promptly paid the full amount to Mass Mutual.

ERC refers to Maloney v. PCRE, LLC, 793 A.2d 1118 (2002), in which the court rejected plaintiff's argument that defendant's failure to pay her an amount due under the contract as being equivalent to a finding that the monies were wrongfully withheld. In

4

finding defendant did not wrongfully withhold the money, the court reasoned that a bona fide dispute existed between the parties, and there was no evidence of bad faith or willfulness on the part of the defendants. Id. at 1137-38. The court further explained that "[a] plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so." Id. at 1138. ERC thus argues that because it did not act in bad faith and did not wrongfully withhold the monies Mass Mutual should not be awarded prejudgment interest.

In determining whether an award of interest is equitable, the Court considers the broader context of this case. ERC and Mass Mutual's reinsurance Treaty originally dates back to August 1993, under which ERC satisfied its contractual obligations by issuing monthly reimbursements to Mass Mutual for losses covered under the Treaty. When ERC commenced this action in April 2006, it unilaterally decided to withhold payments from Mass Mutual, requiring that Mass Mutual front the costs associated with individual disability claims that should have been paid by ERC. By August 2008, when the Court ruled that ERC breached its contractual obligations by withholding payments, ERC owed Mass Mutual a sum of $32,171,436. The Court thus finds that due to the sheer amount owed and the length of time Mass Mutual was deprived of use of the money, ERC's detention was wrongful under the circumstances. See Harris Calorific Sales Co. v. Manifold Systems, Inc., 559 A.2d 241, 245 (citing Bertozzi v. McCarthy, 323 A.2d 553 (1973)) ("[T]he question is whether the interests of justice require the allowance of interest as damages for the loss of use of money.").

5

While the Court finds ERC wrongfully withheld the money from Mass Mutual and an award of prejudgment interest is appropriate under § 37-3a, the Court rejects Mass Mutual's claim that it is entitled to the statutory maximum of ten percent interest. Because there was a bona fide dispute in this case surrounding Mass Mutual's administration of claims and interpretation of covered losses under the Treaty, which, in fact, resulted in some rulings in ERC's favor, the Court declines to adopt an interest rate that would have a punitive effect. In addition, ERC maintained an accurate ledger accounting for the monies withheld, and did not unfairly benefit from detaining the sum during the period in question. Finally, ERC showed good faith by wiring the entire balance due to Mass Mutual promptly after the Court ruled its failure to reimburse Mass Mutual was a breach of its obligations under the Treaty.

As Connecticut has no set rate for statutory prejudgment interest, the rate is determined by the court in its sound discretion based on the facts of the case. O'Hara, 590 A.2d at 956. Also, § 37-3a establishes a maximum rate of ten percent interest that may be awarded but the trial court may vary below this rate ceiling. See Sears Roebuck, 699 A.2d at 90 (declining to find § 37-3a "fixes the rate of prejudgment interest at 10 percent," and holding the plain language of § 37-3a establishes a maximum rate). Based on the foregoing considerations, the Court agrees with ERC's position that, if prejudgment interest is to be awarded, the Court should adopt the one-year constant maturity Treasury rate. This rate is adopted into federal law under 28 U.S.C.A. § 1961 as a fair and reasonable rate of interest.[2]

---

[2] The law states in relevant part: "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the

The Court finds the one-year constant maturity Treasury rate is appropriate because from April 2006 through August 2008, the prevailing interest rate was significantly lower than ten percent due to the declining economy. The Court further finds the interest should begin to accrue for each payment on the date that such payment was due to Mass Mutual such that each monthly payment would accrue interest for a different period of time- the time period from when each payment became due. See Advanced Fin. Servs., Inc. v. Assoc. Appraisal Servs., Inc., 830 A.2d 240, 248 (Conn. App. 2003) ("Interest . . . ordinarily begins to run from the time it is due and payable to the plaintiff.").

Finally, interest awarded under § 37-3a runs until the date judgment is rendered. Paulus v. LaSala, Jr., 742 A.2d 379, 386 (Conn. App. 1994). Mass Mutual urges the Court to grant interest through the date of final judgment. Yet, the Court ruled that ERC breached its contractual obligations in its summary judgment ruling on August 19, 2008, and ERC wired the full amount due to Mass Mutual four days later, on August 24, 2008. In Paulus, the court stated, "[m]oney remains due until it is paid. Until such time as the damages are ascertained and are actually ordered to be paid, they remain due." Id. Accordingly, the Court finds an award of prejudgment interest is due from April 2006, when ERC breached its obligations under the Treaty by ceasing reimbursement payments, through August 19, 2008, the date judgment was rendered and ERC was ordered to pay the sum due to Mass Mutual.

---

date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C.A. § 1961.

The Court hereby adopts in full the calculations set forth in ERC's Affidavit in support of its claim (Doc. No. 374-1), which result in a total interest award of **$1,435,119.**

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that ERC **SHALL** pay Mass Mutual prejudgment interest pursuant to Connecticut General Statute § 37-3a, for the period during which reimbursement payments were withheld, from April 2006 to August 2008, at the one-year constant maturity Treasury rate as set forth in the Affidavit of Kevin Darter (Doc. No. 374-1), for a total interest award of **$1,435,119**.

**IT IS SO ORDERED**.

Date: August 19, 2010　　　　　　　　　　**S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　Chief United States District Judge